**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ADAM FARAG,**
Petitioner,

v. Civil Action No. **3:26CV62 (RCY)**

**JEFFREY CRAWFORD,**
Respondent.

# MEMORANDUM OPINION

This matter comes before the Court on Petitioner Adam Farag's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and subsequent Motion for Ruling on the Petition ("Motion for Ruling"). Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that his prolonged detention in ICE custody violates his constitutional right to due process under the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA"). The matters are ripe for disposition. For the reasons articulated below, the Court will grant the Motion to Expedite, deny the Petition, and lift the injunction against further transfer and removal of Petitioner.

## I. PROCEDURAL HISTORY

Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus on January 23, 2026. ECF No. 1. On January 27, 2026, the Court ordered service upon Respondent and set a briefing schedule. *See* Order, ECF No. 2.

On February 25, 2026, Respondent filed an Opposition to the Petition, ECF No. 4, arguing that Petitioner fails to state a claim for habeas relief because (1) he has not demonstrated that his removal is not "foreseeable," (2) ICE was in the process of securing third-country acceptance of Petitioner, to effectuate the removal of Petitioner, and (3) Petitioner is entitled to no further due

process beyond that established by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner responded on February 26, 2026. Pet'r's Reply, ECF No. 6.

On April 27, 2026, the Court issued a Memorandum Opinion and Order asserting jurisdiction over the pending Petition, enjoining further transfer of Petitioner, and ordering Respondent to file a supplemental Opposition, accompanied by a statement under penalty of perjury, addressing the process by which Respondent was seeking third-country acceptance of Petitioner and the status of such process. ECF Nos. 10, 11. Respondent complied on May 4, 2026, and therein requested partial vacatur of the Court's prior order, specifically with respect to the injunction against transfer of Petitioner, as Respondent represented that the government had secured the agreement of Equatorial Guinea to accept Petitioner and thus the only impediment to Petitioner's removal was this Court's prohibition on further transfers. ECF No. 12.

Petitioner thereafter filed a Motion for Temporary Restraining Order ("TRO Motion") and Motion for Preliminary Injunction, seeking to prevent his removal to Equatorial Guinea based on a theory that such removal violates the Convention Against Torture, 8 C.F.R. § 1208.16(c), FARRA, and the Fifth Amendment's Due Process Clause. ECF Nos. 13, 14. The Court denied the Motions, as it had already enjoined transfer or removal pending its adjudication of the Petition. ECF No. 16. Petitioner thereafter filed various status updates seeking adjudication, ECF Nos. 17, 18, and the instantly pending Motion for Ruling, ECF No. 19.

On September 14, 2026, the Court ordered Respondent to provide an ultimate status update, addressing specifically (1) whether Equatorial Guinea remained positioned to accept Petitioner, and (2) any challenges to removal Petitioner may have lodged in the immigration system, including but not limited to challenges based on the Convention Against Torture. ECF No. 20. Respondent complied on September 21, 2026, and affirmed that "Equatorial Guinea's acceptance of Petitioner

for removal remains in effect, and removals to Equatorial Guinea are being effectuated," but noted that Petitioner's removal remained barred by this Court's orders. ECF No. 21, at 1. Respondent further asserted "that Petitioner has not lodged any challenges to his proposed removal to Equatorial Guinea in the immigration system." *Id.*

## II. FACTUAL BACKGROUND

Petitioner is a national and citizen of Egypt. Pet. ¶ 6. He entered the United States without inspection on or about October 15, 2024, and was shortly thereafter encountered and taken into custody by Customs and Border Protection (CBP). *Id.* ¶ 8; Byrne Decl. ¶ 6, ECF No. 5-1. Petitioner was served with a Form I-860, Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A). Byrne Decl. ¶ 6. On May 21, 2025, the Annandale Immigration Court ordered Petitioner removed to Egypt. *Id.* ¶ 9. Before he could be removed, Petitioner made an application for protection under the Convention Against Torture (CAT), was granted a credible fear interview, and was subsequently granted a Withholding of Removal under the CAT. *Id*. ¶ 9; Pet. ¶ 8. Petitioner waived appeal of the May 21, 2025 decision, so his removal order became administratively final as of that date. Petitioner's detention continued pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Byrne Decl. ¶ 7. On or about August 18, 2025, a 90-day custody review was completed, and it was determined that Petitioner should remain detained because he did not establish that he did not pose a significant risk of flight pending his removal. *Id.* ¶ 11. The same determination was again reached on November 12, 2025, further strengthened by the fact that DHS was actively working on Petitioner's removal to a third country. *Id.* ¶ 12.

As of February 9, 2026, Tunisia declined the DHS's request to receive Petitioner, while Saudi Arabia and Chad had yet to respond. *Id.* ¶ 10.

On May 4, 2026, Respondent updated the Court that Equatorial Guinea had accepted

Petitioner for removal pursuant to a Third Country Removal Agreement signed between Equatorial Guinea and the United States. Richardson Decl. ¶ 6, ECF No. 12-1. Notably, Equatorial Guinea has "provided diplomatic assurances that aliens removed pursuant to the Third Country Removal Agreement will not be persecuted or tortured[,]" and "[t]he Department of State determined that the diplomatic assurances were credible." *Id.* ¶ 7.

As of September 21, 2026, this acceptance remains in place, and Petitioner has not sought to challenge his removal to Equatorial Guinea through any immigration system channels. ECF No. 21, at 1.

## III. STANDARDS OF REVIEW

### A. Habeas Petitions

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. § 1231 and *Zadvydas*

8 U.S.C. § 1231[1] governs the detention and removal of aliens subject to final orders of removal. Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall

[1] Providing, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed
(1) Removal period
(A) In general

be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A). An alien not removed during the 90-day removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides allowance for the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation.'" *Id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id.* But if an alien is detained beyond six months, the reasonable presumption no longer exists. At that point, if the alien makes a *prima facie* showing "'that there is no

---

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")
>
> * * *
>
> (2) Detention
>
> (A) In general
>
> During the removal period, the Attorney General shall detain the alien[.]

8 U.S.C. § 1231(a)(1)–(2).

significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

## IV. ANALYSIS

The issue before the Court is whether Petitioner's removal from the United States is likely to occur in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Based on the papers initially filed, this was a question open to debate. And even after Respondent's initial update identifying Equatorial Guinea as an available Third Country Removal recipient, the Court gave credence to Petitioner's apparent surprise at the prospect of removal to Equatorial Guinea and his professed fear of, *inter alia*, being "expose[d] . . . to documented torture by Equatorial Guinean security forces." Prelim. Injunction Mot. 1, 3, ECF No. 14. Petitioner framed his objection in terms of there having been no adjudication of Equatorial Guinea as an appropriate secondary country of removal throughout his various immigration proceedings and determinations by actors within the immigration system. *Id.* at 2. Yet, in the time since Petitioner has been on notice of this prospect for removal, and while he has been shielded from removal by this Court's Order enjoining transfer or removal, Petitioner has not sought any such adjudication within the immigration system, nor has he otherwise challenged the prospect of removal to Equatorial Guinea, except in his filings to this Court. *See* Resp't's Resp. 1, ECF No. 21. This is dispositive.

Respondent has obtained the necessary consent to receive Petitioner from Equatorial Guinea, and removals to this country are ongoing; all that remains is for the Court to lift its

injunction on further transfer and removal, and Petitioner's final order of removal can be effectuated. *Id.*

Because Petitioner has not availed himself of the injunction against removal to pursue administrative challenges to his removal to Equatorial Guinea, and because that country's acceptance of Petitioner for removal remains in effect, the Court finds that Petitioner's removal is likely to occur in the reasonably foreseeable future, *Zadvydas*, 533 U.S. at 701, and therefore the Court must deny the Petition, lift the injunction against further transfer, and permit the Government to move forward with effectuating Petitioner's final removal order.

An appropriate Order will issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 22, 2026
Richmond, Virginia